United States District Court
Southern District of Texas
**ENTERED**
December 20, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JEWELL THOMAS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 2:22-CV-00253 |
| § | |
| ISAAC KWARTENG, *et al.*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM AND RECOMMENDATION
# TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated for purposes of screening Eighth Amendment deliberate indifference claims against **Dr. Isaac Kwarteng** in his individual capacity. Accordingly, it is respectfully recommended that these deliberate indifference claims be **RETAINED**. The undersigned will order service on **Dr. Isaac Kwarteng**.

For the reasons set forth below, the undersigned recommends further that Plaintiff's ADA/RA claims against **Dr. Isaac Kwarteng and Dr. Lanette Linthicum** in their official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues Dr. Isaac Kwarteng (Dr. Kwarteng) and Dr. Lanette Linthicum (Dr. Linthicum). Plaintiff alleges that Dr. Kwarteng failed "to provide travel restrictions for the Plaintiff to attend offsite medical appointments." (D.E. 1, p. 8). As such, Plaintiff asserts that Dr. Kwarteng "excluded the Plaintiff from participating in medical services solely by reason of his disabilities namely lateral pelvic tilt with diagnosed Chronic Pain Syndrome." (*Id.*). Plaintiff further alleges that Dr. Kwarteng delayed treatment for Plaintiff's urinary complications leading to a visit to the emergency room.

(*Id.*).  Plaintiff sues Dr. Linthicum under a theory of *respondeat superior*. (*Id.*).  Plaintiff seeks monetary relief.  (*Id.* at 8).

As directed by the Court, Plaintiff filed a More Definite Statement in which he explains his claims in more detail.  (D.E. 9).  Plaintiff alleges the following facts in his Original Complaint and More Definite Statement.  (D.E.'s 1 and 9).  Plaintiff states that he is 50 years old.  (D.E. 9, p. 1). He is 6'0" tall and weighs 213 pounds.  (*Id.*).  Plaintiff arrived at the McConnell Unit on October 1, 2021.  (*Id.*).

Plaintiff suffers from Regional Complex Chronic Pain Syndrome, a lateral pelvic tilt, and diabetes.  (*Id.* at 1-2).  Plaintiff describes his lateral pelvic tilt as caused by a leg-length discrepancy.  (*Id.* at 2).  Because Plaintiff's hip is not properly aligned, he also suffers from pain in multiple areas of the body.  (*Id.*).  Plaintiff's physical disabilities prevent Plaintiff from accessing medical services, the law library, and the dining facility due to the unbearable pain.  (*Id.*).  According to Plaintiff, his pain levels are reduced by remaining bedridden with his leg elevated above his heart for eighteen hours daily.  (*Id.*).

Plaintiff missed the following medical appointments between November 2021 and November 2022: (1) an appointment with the Brace and Limb Department for the purpose of providing Plaintiff with a special shoe to wear to aid his leg-length discrepancy; (2) an Orthopedic specialist appointment to determine if Plaintiff required a higher level of pain management; (3) an eye appointment due to Plaintiff's complaints of having blurred vision; and (4) a urology appointment to address complications from his inability to urinate.  (*Id.* at 2-3).  According to Plaintiff, Dr. Kwarteng prevented Plaintiff from attending these

appointments by failing to provide appropriate travel restrictions such as the use of a van with limited sitting space. (*Id.* at 3). Dr. Kwarteng also failed to provide Plaintiff with pain medication that would reduce the difficulty in accessing offsite medical services. (*Id.*).

To date, none of the medical appointments have been rescheduled. (*Id.*). By failing to attend these appointments, Plaintiff continues to walk with an awkward gait that causes him daily pain due to his leg-length discrepancy. (*Id.*). Plaintiff continues to suffer: (1) daily pain because the Orthopedic specialist has not provided a diagnosis; (2) blurred vision; and (3) ongoing urinary complications such as infection, urine retention, urinary pain, and blood in the urine. (*Id.* at 3-4). Plaintiff also suffers from swelling in his legs and pain as a result of his diabetes condition. (*Id.* at 6).

Plaintiff first reported his urinary complications in February 2022. (*Id.* at 4). Plaintiff submitted multiple sick call requests between February 2022 and November 2022. (*Id.*). Plaintiff received several responses with the notation "PSC," which means that he was scheduled to see a medical provider. (*Id.* at 5). Dr. Kwarteng never treated Plaintiff for his urinary complications. (*Id.*).

Plaintiff did not receive any medical attention for his urinary issues until September 18, 2022. (*Id.* at 4). On that day, Plaintiff was unable to urinate for over twelve hours even though he had the urge to go. (*Id.*). Plaintiff was in great pain from his stomach to his testicles and had blood discharging from his urine. (*Id.* at 4-5). Plaintiff was transported

to a hospital's emergency room. (*Id.*). At the hospital, Plaintiff was prescribed pain medication, and a catheter for urine flow was installed. (*Id.* at 5).

As of November 11, 2022, Plaintiff continues to suffer constant urinary pain with infection and bloody urine. (*Id.* at 5). Plaintiff has not been seen by a urologist even though he is scheduled to see one. (*Id.*).

Plaintiff holds Dr. Kwarteng responsible for his urine complications by not having policies to address understaffing at the medical department or to ensure timely resolution of inmate-patient complaints by Dr. Kwarteng or his subordinates. (*Id.* at 5-6). Dr. Kwarteng further ignored Plaintiff's direct complaints sent to him personally. (*Id.* at 5). According to Plaintiff, Dr. Kwarteng discriminated against him by failing to accommodate patients with limb or leg deformities that would serve as a reasonable accommodation. (*Id.* at 6). Plaintiff sues Dr. Kwarteng in his individual capacity for his Eighth Amendment claims and in his official capacity for ADA/RA violations. (*Id.*).

With respect to his ADA/RA claim against Dr. Linthicum, Plaintiff sues her under a theory of *respondeat superior* for the discriminatory acts of her subordinates. (*Id.* at 7). Dr. Linthicum is sued in her official capacity only. (*Id.*).

Plaintiff reiterates in his More Definite Statement that he seeks monetary relief. (*Id.*).

### III.     LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give

rise to a reasonable inference that Defendant is liable. *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

IV. **DISCUSSION**

A. **Plaintiff's § 1983 Eighth Amendment Claim**

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *report and recommendation adopted* 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)). A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff claims that Dr. Kwarteng acted with deliberate indifference to his serious medical needs by causing him to miss numerous appointments with medical specialists in connection with his treatment for pain, his leg-length discrepancy, his blurred vision, and urine complications. Plaintiff further claims that Dr. Kwarteng acted with deliberate indifference by failing to provide adequate and timely treatment for his urinary issues.

According to Plaintiff, Dr. Kwarteng prevented Plaintiff from attending various medical appointments by failing to provide: (1) appropriate travel restrictions so that Plaintiff could attend; and (2) adequate medication for Plaintiff to reduce the difficulty in accessing offsite medical services. (D.E. , p. 8; D.E. 9, p. 3). Plaintiff alleges that, as a result of missing his medical appointments, he continued to suffer in daily pain due to his leg-length discrepancy, blurred vision, extensive urinary complications, and leg swelling. (D.E. 9, pp. 3-4, 6). With regard to his urinary issues, Plaintiff alleges that: (1) despite

submitting multiple sick call requests between February 2022 and November 2022, Dr. Kwarteng never treated Plaintiff for his urinary issues; (2) Plaintiff ended up in the hospital's ER room after not being able to urinate for over 12 overs and being in great pain with a bloody discharge; and (3) as of November 11, 2022, he continues to suffer constant urinary pain with infection and bloody urine. (*Id.* at 4-5).

Plaintiff's allegations, accepted as true, are sufficient to allege deliberate indifference claims against Dr. Kwarteng with regard to Plaintiff's missed appointments and his treatment for his urinary issues. Accordingly, the undersigned respectfully recommends that the Court retain these Eight Amendment claims against Dr. Kwarteng in his individual capacity.

### B. ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or

private." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)). Courts utilize the same standards in analyzing claims under both the ADA and RA. *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011). The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim. *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations

were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner." *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018)). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

Plaintiff brings his ADA/RA claims against Defendants in their official capacities only. The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *recommendation adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)). The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

"The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population." *Peña Arita v. County of Starr, Texas*, No. 7:19-cv-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sep. 11, 2020) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)). Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently states he suffers from physical impairments that greatly limit his daily life activities and, at least for purposes of this screening, indicate he is a "qualified individual with a disability."

Plaintiff claims that his ADA/RA rights were violated when Dr. Kwarteng failed to accommodate his limb or leg deformities and facilitate treatment with outside specialists. (D.E. 9, p. 6). Without these reasonable accommodations, Plaintiff asserts he was

effectively denied access to medical services and other activities available to him within the TDCJ system. (*Id.* at 2). With respect to his ADA/RA claim against Dr. Linthicum, Plaintiff sues her under a theory of *respondeat superior*. (*Id.* at 7).

Plaintiff's allegations, accepted as true, fail to state an ADA/RA claim. Regardless of how Plaintiff frames his ADA/RA claims, he essentially argues that he is being denied his requested medical treatment for his various physical conditions and medical issues. Plaintiff provides no specific facts to indicate how Dr. Kwarteng's actions impacting Plaintiff's medical appointments with outside specialists and his treatment of various medical issues were motivated by Plaintiff's disabilities. Rather than suggest he has been excluded from such treatment by reason of his disabilities, Plaintiff's complaints center on the denial of his requested medical treatment. *See Payne*, 2021 WL 3173902, at *2. "[N]either the ADA nor RA covers the mere absence or inadequacy of medical treatment for a prisoner." *Id.* (citing *Bryant*, 84 F.3d at 249 and *Nottingham*, 499 F. App'x at 377). *See also Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021)) (explaining that "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners) (citation omitted); *Whetstone*, 2018 WL 1022586, at *2 ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

Accordingly, the undersigned recommends that Plaintiff's ADA/RA claims against Defendants in their official capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

## V. RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's Eighth Amendment deliberate indifference claims against **Dr. Kwarteng** in his official capacity. The undersigned will order service on **Dr. Kwarteng** by separate order.

The undersigned recommends further that Plaintiff's ADA/RA claims against **Dr. Kwarteng and Dr. Linthicum** in their official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

Respectfully submitted on December 20, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).